Rothstein, Wolf, Kaplan & Goff and Richard D. Goff, St. Paul, for appellant.

Earle T. Anderson, Jr., Minneapolis, for petitioner, respondent.

Peterson, Engberg & Peterson and Jay Y. Benanav, Minneapolis, amici curiae, for Minneapolis Police Relief Ass'n.

**In re the Marriage of Judith M. JANSSEN, Petitioner, Respondent,**

v.

**George R. JANSSEN, Appellant.**

**No. C0-82-102.**

Supreme Court of Minnesota.

April 1, 1983.

PETERSON, Justice.

This appeal from a judgment and decree entered in a marriage dissolution proceeding presents the singular question: how should a nonvested, unmatured pension be treated in an action for the dissolution of a marriage? Because we hold that such a pension is *marital property* within the meaning of Minn.Stat. § 518.54, subd. 5 (1982), we vacate, in part, the judgment of the trial court and remand the case for further proceedings not inconsistent with this opinion.

A statement of relevant facts is necessary before discussing the legal issue. Appellant George R. Janssen and respondent Judith M. Janssen were married in 1966. Appellant was born on February 23, 1939; respondent was born on October 26, 1942.

They have four children, who are all minors. The marriage was dissolved on October 20, 1981.

Commencing on April 19, 1962, and continuing throughout the duration of the marriage, appellant worked as a police officer for the City of Minneapolis. At the time of the marriage dissolution, appellant received a gross income of $1,986.83 per month from this position, although he supplemented his income by performing other part-time work. As part of his employment, he contributed to and acquired benefits from the Minneapolis Police Pension fund (pension fund). Regulations of the pension fund permit appellant to retire after 20 years of service, which would be April 19, 1982, although benefits would not be paid until appellant reached age 50. If 20 years of service are not completed, one receives only $100 for every year of actual service completed. The trial court found that the present value of appellant's pension benefits acquired *during* the marriage was $90,-306.97 (a finding not disputed on appeal).

Respondent at the same time was employed only on a part-time basis, netting $600 per month. She was enrolled in a bartending course and received some rental income and public assistance as well. She has no special employment skills.

The parties owned a house in Minneapolis, various motor vehicles, various savings and checking accounts, and life insurance policies. The value of these assets, other than their home, was not substantial.

As part of the judgment and decree, the trial court awarded custody of the four minor children to respondent, ordered appellant to pay $125 per month per child in child support, awarded no spousal maintenance, and allowed respondent to use the home until June 1, 1988, at which time it is to be listed for sale, the proceeds from such sale to be divided equally between the parties.[1] Other assets were divided in a manner not significant to this appeal. Of im-portance, however, is the treatment of appellant's pension. The trial court's conclusion reads:

> 11. *Pension Interests.* At this time, the petitioner is entitled to the sum of $700.00, as provided for in paragraph 9.3 hereinabove, representing one-half (½) of respondent's interest in the police pension fund. That the true value of petitioner's interest in respondent's pension cannot be determined at this time. That the petitioner therefore is entitled to a re-evaluation of her interest in said pension in the event respondent concludes 20 years of service on the Minneapolis force. [Note: petitioner is respondent on appeal; respondent is appellant on appeal.]

The judgment and decree was entered on October 20, 1981, some 6 months before appellant's pension fund benefits vested.

■ With this factual backdrop, we turn to the issue for decision: whether a nonvested, unmatured pension is marital property which can be divided in a marital dissolution proceeding. Two terms must first be defined. A *vested* pension refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement. In other words, a right which survives the voluntary or involuntary termination of the employee. A *matured* pension is one to which the employee has an unconditional right to immediate payment. Thus a pension may be vested but not yet matured, and in that case the party would have no right to immediate payment of the pension benefits. Vested but unmatured pensions may be forfeited if the employee does not survive until retirement, if the plan so provides. *See,* Note, *Pensions as Property Subject to Equitable Division Upon Divorce in Oklahoma,* 14 Tulsa L.J. 168, 182 n. 104 (1978). In the present case, at the time of trial, appellant's pension was both nonvested and unmatured, meaning that if appellant terminated employment only $100 for

---

1. The original judgment and decree had originally allowed respondent to use the house until (1) she moved; (2) she married; or (3) the youngest child turned 18. The trial court ordered that this conclusion of law be amended to allow the homestead to be placed on sale on June 1, 1988.

every year of completed service would be returned.

Marital property is defined in Minn.Stat. § 518.54, subd. 5 (1982), as follows:

*"Marital property" means property, real or personal, including vested pension benefits or rights, acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding at any time during the existence of the marriage relation between them, or at any time during which the parties were living together as husband and wife under a purported marriage relationship which is annulled in an annulment proceeding.* All property acquired by either spouse subsequent to the marriage and before a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in a form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. Each spouse shall be deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree in a proceeding for dissolution or annulment. The extent of the vested interest shall be determined and made final by the court pursuant to section 518.58. The presumption of marital property is overcome by a showing that the property is non-marital property.

"Non-marital property" means property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);

(d) is acquired by a spouse after a decree of legal separation; or

(e) is excluded by a valid antenuptial contract.

(Emphasis supplied.)

Two questions naturally arise in defining a nonvested, unmatured pension right as marital property. The first is whether such a pension right is even property. And once this question is answered in the affirmative, the second question is whether the legislature—by specifically including vested pension benefits or rights in its definition of marital property—meant to exclude nonvested pension benefits or rights.

■ 1. The question whether a nonvested pension right is marital property is substantially answered by our recent opinion: in *Christensen v. Minneapolis Municipal Employees Retirement Board,* 740 N.W.2d 331 (Minn.1983), in which we held that a public employer's promise of a pension to the appellant in that case was binding on the public employer under the principles of promissory estoppel, overruling *Gibbs v. Minneapolis Fire Dept. Relief Ass'n,* 125 Minn. 174, 145 N.W. 1075 (1914), and other cases that had used a gratuity approach to public pension or retirement plans. Now, in consequence, the interest appellant holds becomes more than a mere expectancy—it becomes a *chose in action,* a contractual right: a property interest. *See In re Marriage of Brown,* 15 Cal.3d 838, 845, 126 Cal.Rptr. 633, 637, 544 P.2d 561, 565 (1976); *Kruger v. Kruger,* 73 N.J. 464, 468, 375 A.2d 659, 662–63 (1977).

This result—finding a property interest in a nonvested pension—was forecast by our holding in *Elliott v. Elliott,* 274 N.W.2d 75 (Minn.1978). At the time of the decision, no mention was made of pensions in the marital property definition, yet we held that they were property. To support this proposition, we cited both community property and common law property jurisdictions. *Id.* at 77 n. 8. Only the community property jurisdictions had expressly decided that nonvested, unmatured pensions were property. *See, e.g., In re Marriage of Brown, supra; Clearley v. Clearley,* 544 S.W.2d 661 (Tex.1976); *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975). But we do not think that a reasonable distinction can be drawn in this area between community and common law states, and our decision in *Elliott* reflected that belief. *See*

*also, Englert v. Englert,* 576 P.2d 1274 (Utah 1978). For an excellent annotation of cases relating to the issue of pension benefits and rights, and their disposition in marital dissolution proceedings, *see* Annot. 94 A.L.R.3d 176 (1972).[2]

2. The second question is whether Minn. Stat. § 518.54, subd. 5 (1982), excludes nonvested pensions by its own terms. By expressly including vested pension benefits or rights, appellant argues, the legislature intended to exclude nonvested pension benefits or rights.[3]

As with all statutory construction analyses, our task is to give effect to the intent of the legislature. *Fink v. Cold Spring Granite Co.,* 262 Minn. 393, 398, 115 N.W.2d 22, 26 (1962). In this regard, Minn.Stat. § 518.54, subd. 5 (1982), operates to give an expansive definition of what constitutes marital property, and then follows the expansive definition by five enumerated exceptions, defining nonmarital property. Nonvested pensions do not come within the list of nonmarital property. To exclude nonvested pensions from property would be to create a sixth exception. Such a result we consider to be contrary to Minn.Stat. § 645.19 (1982) and well-settled rules of statutory construction.

Minn.Stat. § 645.19 (1982) reads: "Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a law shall be construed to exclude all others."

The rule is discussed in 2A Sutherland, *Statutory Construction* § 47.11 (4th ed. 1973):

> It has been held that exceptions are not to be implied. Especially where there is an express exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied. *An enumeration of exceptions from the operation of a statute indicates that it should apply to all cases not specifically enumerated.*

(Emphasis supplied) (footnotes omitted).

The phrase "including vested pension benefits" is not a proviso, but rather an

---

**2.** We note with interest that the strongest authority against holding nonvested pension rights as marital property comes from Colorado. The reasoning for the result reached is that such rights have no cash surrender value, loan value, redemption value, lump sum value, and value realizable after death. *Ellis v. Ellis,* 191 Colo. 317, 552 P.2d 506, 507 (Colo.1976); *In re Marriage of Camarata,* 43 Colo.App. 317, 602 P.2d 907 (Colo.App.1979). Other jurisdictions follow this result. *See, e.g., Fenney v. Fenney,* 259 Ark. 858, 537 S.W.2d 367 (1976); *Baker v. Baker,* 120 N.H. 645, 421 A.2d 998 (N.H.1980). These cases dealt with military retirement pay, and could perhaps be distinguished on that ground, but we do not need to follow that path, because we think that these cases take too narrow a view of what is property, relying more on value than on the contractual rights involved. Further, such a technical, strict construction of property would be at odds with our pronounced policy of giving a "broad and liberal construction" of the dissolution statutes for the purposes of making equitable settlements between parties. *Maust v. Maust,* 222 Minn. 135, 140, 23 N.W.2d 537, 540 (1946).

**3.** Language was added to this subdivision which became effective March 19, 1982 (after the judgment under review). The addition reads:

> *Each spouse shall be deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree in a proceeding for dissolution or annulment. The extent of the vested interest shall be determined and made final by the court pursuant to section 518.58.* The presumption of marital property is overcome by a showing that the property is ~~of a type listed in clauses (a) to (3)~~ non-marital property.

Act of March 18, 1982, ch. 464, § 1, § 3, 1982 Minn.Laws 451–53. Appellant contends that this addition has some bearing on the issue presented to the court. It does not. The language was meant to confirm, clarify, and ratify legislative intent already embodied in the definition of marital property: that divisions of marital property are *not* taxable events. By our holding, we do no more than allow a property interest—albeit a contingent interest—to be split. The concept of vesting in the statute—which relates to when parties have common ownership in assets—should not be confused with vesting of the pension. The parties, in the present case, do have common ownership in the contingent interest; the payment of that interest is delayed. See *United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), for a discussion on taxable versus nontaxable divisions of assets in a marital dissolution.

example of what may be included in marital property. In conjunction with reading only enumerated exceptions into the statute, the term "including" should not be read as a term of limitation. As stated in 2A Sutherland, *Statutory Construction,* § 47.07:

> A term whose statutory definition declares what it "includes" is more susceptible to extension of meaning by construction than where the definition declares what a term "means." Thus, it has been said that the word 'includes' is usually a term of enlargement, and not of limitation . . . . It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated . . . ."

Our reading of legislative intent comports with the growing recognition of pension rights and their importance as a major asset in marital dissolution proceedings. In the instant case, the pension was one of the major assets of the marriage, and only the house ranked with equal stature. To award one party this asset would ignore the presumption of Minn.Stat. § 518.58 (1982) that each spouse contributed to the acquisition of property while they lived together as husband and wife.

■ 3. Having concluded that nonvested pensions are included within the definition of marital property, we now analyze the trial court's decision. The trial court entered a judgment and decree, but failed to divide the parties' respective interests in the pension, waiting instead until the pension vested. At that time, respondent's interest in the pension would be evaluated. The better result, for which we remand, would have been a division—as part of the judgment and decree—ordering apportionment of the future benefits *only if and when such benefits are paid.* We recently outlined a method of division for vested but unmatured benefits in *Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983). Nonvested pensions need not be treated any differently than vested but unmatured pension rights or benefits: both contain contingencies on the actual payment of pension benefits.

Apportioning the future benefits only if and when they are paid is an approach suggested in the leading case, *In re Brown, supra,* and in other decisions. *In re Marriage of Hunt,* 78 Ill.App.3d 653, 663, 34 Ill.Dec. 55, 397 N.E.2d 511, 519 (1979), offers especially appropriate guidance to trial courts facing this type of division:

> In those instances where it is difficult to place a present value on the pension or profit sharing interest due to uncertainties regarding vesting or maturation * * then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid "if, as and when" the pension becomes payable. [Citations omitted.] The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid. The trial court, when using this method of allocation, will retain jurisdiction and award the nonemployee spouse some percentage of the marital interest in each payment.

We realize that this approach may necessitate the trial court's retention of jurisdiction to oversee the marital property division, but such an administrative burden is not insuperable. Trial courts routinely assume supervision of maintenance payments.

The judgment is affirmed in part, vacated in part, and remanded for further proceedings not inconsistent with this opinion.